**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

Jason Berry

   v.                               Civil No. 17-cv-143-LM
                                       Opinion No. 2018 DNH 142

Federal Bureau of
Investigation, et al.

## O R D E R

Jason T. Berry brings claims for violation of the Privacy Act, 5 U.S.C. § 552a, against the Federal Bureau of Investigation ("FBI") and one of its agents, Mark Hastbacka, alleging that Hastbacka improperly disclosed information about him to third parties. Berry also brings a Bivens claim against Hastbacka based on the same alleged conduct. See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). Defendants move to dismiss Berry's second amended complaint (doc. no. 34), arguing that Berry's claims fail as a matter of law. Berry objects.

## STANDARD OF REVIEW

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v.

[Wells Fargo Bank, N.A.](), [772 F.3d 63, 71 (1st Cir. 2014)]()
(internal quotation marks omitted).  A claim is facially
plausible "when the plaintiff pleads factual content that allows
the court to draw the reasonable inference that the defendant is
liable for the misconduct alleged."  [Ashcroft v. Iqbal, 556 U.S.
662, 678 (2009)]().

**BACKGROUND**

I.   <u>Factual Background</u>[1]

     Berry is a former probation and parole officer for the
state of New Hampshire.  In this role, Berry assisted members of
the FBI's Safe Streets Task Force in arrests and other tasks.
On February 23, 2017, Berry sent a request under the Freedom of
Information Act ("FOIA") to the FBI office in Bedford, New
Hampshire, seeking "any information regarding his personal
information and historical documentation of his past involvement
in the activities of the Safe Streets Task Force in New
Hampshire."  Doc. no. [34]() at ¶ 16.

     In response to Berry's FOIA request, Hastbacka called
Berry's parents and left a voicemail on their home phone.  In
that voicemail, Hastbacka said that he was calling about some
correspondence that Berry had sent.  Hastbacka added that he had

---

[1] The allegations in this section are taken from Berry's
second amended complaint, which is the operative complaint in
this action.  See doc. no. [34]().

2

"tried to call [Berry] a couple of times, he's not picking up, and there's no voicemail." Doc. no. 34 at ¶ 21. Hastbacka requested that he be called back and left a telephone number where he could be reached.

Berry's parents were not aware that he had sent a FOIA request to the FBI. Upon hearing the voicemail, Berry's parents "were confused and concerned about being contacted by the Federal Bureau of Investigation about their son." Doc. no. 34 at ¶ 23. Berry wrote Hastbacka and informed him that his call "has resulted in a 'confusing' effect on him and his parents." Id. at ¶ 26. In that letter, Berry also requested that Hastbacka tell him how he knew the identity of his parents and their contact information. Hastbacka, however, did not respond to this letter.

II. Procedural Background

Berry filed this lawsuit, proceeding pro se, against the FBI and Hastbacka in April 2017, alleging that Hastbacka and the FBI violated the Privacy Act by disclosing the existence of his FOIA request to his parents. Berry also brought a Bivens claim against Hastbacka, alleging that Hastbacka violated his privacy rights by disclosing his FOIA request. Berry amended his complaint in October 2017. That amendment added no new

substantive allegations but did append a copy of the voicemail that Hastbacka left Berry's parents.

Defendants moved to dismiss Berry's amended complaint, arguing that each of Berry's claims failed as a matter of law. The court granted defendants' motion to dismiss, holding that Hastbacka was not a proper defendant under the Privacy Act, the remedies that Berry sought against the FBI (damages for emotional distress and injunctive relief) were not available under the statute, and that no Bivens remedy existed for the disclosure of a person's private information. Doc. no. 31. The court, however, observed that Berry's complaint alluded to several other theories of liability. Because Berry is a pro se litigant, and because Berry had not had the opportunity to amend the substantive allegations in his complaint, the court granted defendants' motion to dismiss without prejudice to Berry filing another complaint that stated legally sufficient claims against Hastbacka or the FBI.

On March 5, 2018, Berry filed his second amended complaint, which defendants now move to dismiss. See doc. no. 35.

## DISCUSSION

In his second amended complaint, Berry alleges two claims for violation of the Privacy Act, 5 U.S.C. § 552a (Counts I and II). Berry brings Count I against the FBI and Count II against

both Hastbacka and the FBI.  In addition, Berry brings a <u>Bivens</u>
claim against Hastbacka for violation of his Fourth Amendment
rights (Count III).

Defendants move to dismiss Count I, arguing that Berry has
failed to allege any damages that would be available under the
Privacy Act.  Defendants also contend that Count II, which is
brought under the Privacy Act's criminal penalties provision, 5
U.S.C. § 552a(i), fails because there is no private right of
action under that provision.  Finally, defendants move to
dismiss the <u>Bivens</u> claim against Hastbacka, arguing that Berry
has failed to allege a constitutional violation and that
Hastbacka is entitled to qualified immunity.  In response, Berry
contends that he has sufficiently pled the claims in his second
amended complaint.

I.    <u>Privacy Act Claims (Counts I and II)</u>

In Count I, Berry asserts a claim against the FBI for
violating section (b) of the Privacy Act, which generally
prohibits agencies from disclosing records about a person
without his prior consent.  In Count II, Berry asserts a claim
against the FBI and Hastbacka under section (i) of the Privacy
Act, which makes it a criminal misdemeanor punishable by a fine
of up to $5,000 to disclose records in violation of the Act's
requirements.  § 552a(i)(1).  Both claims are based on the

allegation that Hastbacka violated the Privacy Act by contacting Berry's parents and disclosing to them that he had sent the FBI a FOIA request.

Defendants argue that Berry has failed to state a plausible Privacy Act claim in Count I because he has not alleged that he suffered actual damages, which are the only damages available under the Act. In addition, defendants argue that Count II fails because § 552a(i) does not contain a private right of action that would allow Berry to bring suit.

In response, Berry contends that he has suffered actual damages and that he should be permitted to proceed to discovery and trial on the issue of damages. Berry further contends that he is at least entitled to the statutory minimum damages of $1,000.

A. Count I

The Privacy Act contains a civil remedies provision, which permits an individual harmed by a violation of the Act to bring a civil lawsuit. See 5 U.S.C. § 552a(g)(1). Under § 552a(g), when an agency commits an "intentional or willful" violation of the Act, the United States is liable for "actual damages" caused by that violation. F.A.A. v. Cooper, 566 U.S. 284, 291 (2012) (quoting 5 U.S.C. § 552a(g)(4)(A)).

In the court's order on defendants' first motion to dismiss, it held that Berry's Privacy Act claim for damages failed as a matter of law because the only injury he alleged, emotional distress, was not recoverable as "actual damages" under the Act.  See doc. no. 31 at 10-13.  As the court explained, the Supreme Court in Cooper interpreted the phrase "actual damages" in § 552a(g) as authorizing only damages for actual pecuniary harm.  See id. at 11 (citing Cooper, 566 U.S. at 298, 302-304).  In coming to this conclusion, the Cooper court reasoned that the term "actual damages" was synonymous with "special damages," a category of damages available in slander and libel per quod cases.  Cooper, 566 U.S. at 295-98.  The court distinguished this type of damages from general damages, a category of damages not available under the Privacy Act, which includes damages for "loss of reputation, shame, mortification, injury to the feelings and the like."  Id. at 295-96.

Under Federal Rule of Civil Procedure 9(g), "an item of special damages . . . must be specifically stated."  This pleading requirement applies to plaintiffs alleging claims for damages under the Privacy Act.  Cooper, 566 U.S. at 295 (noting that "special damages . . . must be specially pleaded and proved"); Richardson v. Bd. of Governors of Fed. Reserve Sys., 288 F. Supp. 3d 231, 236 (D.D.C. 2018); Doe v. United States,

No. 16-CV-00071-FJG, 2017 WL 3996416, at *4 (W.D. Mo. Sept. 11, 2017) (concluding that Privacy Act plaintiffs must "specifically plead their special damages").  "An allegation of special damages is sufficient when it notifies the defendant of the nature of the claimed damages even though it does not delineate them with as great precision as might be possible or desirable." Sufficiency of Pleading Special Damages, 27 Fed. Proc., Lawyers. Ed. § 62:157.  Although a plaintiff need not state the precise dollar amount of damages sought, "the pleadings must demonstrate an actual pecuniary loss."  Id.; see also Galarneau v. Merrill Lynch, Pierce, Fenner & Smith Inc., 504 F.3d 189, 203-04 (1st Cir. 2007), as amended (Nov. 30, 2007) (observing that plaintiff alleging special damages must "allege . . . her economic injuries").

     Accordingly, courts routinely dismiss claims for damages under the Privacy Act that fail to allege any discernible pecuniary injury.  Richardson, 288 F. Supp. at 238; Welborn v. Internal Revenue Serv., 218 F. Supp. 3d 64, 82-83 (D.D.C. 2016) (dismissing Privacy Act claim because plaintiff failed to allege "actual pecuniary or material damage"), appeal dismissed, No. 16-5365, 2017 WL 2373044 (D.C. Cir. Apr. 18, 2017); Chichakli, 203 F. Supp. 3d at 57-58; Ramey v. Comm'r Internal Revenue Serv., No. 1:14-CV-225, 2015 WL 4885234, at *5 (N.D.W. Va. Aug. 14, 2015) (dismissing Privacy Act claim because plaintiff failed

to "allege any facts to support an adverse effect with actual damages"), report and recommendation adopted sub nom. Ramey v. Comm'r of Internal Revenue Serv., No. 1:14CV225, 2015 WL 7313873 (N.D.W. Va. Nov. 20, 2015); Young v. Tryon, 12-CV-6251-CJS-MWP, 2013 WL 2471543, at *6-7 (W.D.N.Y. June 7, 2013); Iqbal v. F.B.I., No. 3:11-CV-369-J-37JBT, 2012 WL 2366634, at *6 (M.D. Fla. June 21, 2012) (dismissing Privacy Act claim because complaint did not allege "some pecuniary harm").

Here, Berry alleges that he is entitled to actual damages, but does not specifically state the actual damages he seeks. Moreover, Berry does not allege that he suffered any pecuniary loss that could support an award for actual damages under the Privacy Act. The only harm that Berry appears to allege in his second amended complaint is that he and his parents were confused by Hastbacka's voicemail. This allegation, however, is the type of emotional harm for which damages are not recoverable under the Privacy Act. Because Berry has failed to allege any pecuniary harm that would entitle him to the actual damages he seeks, he has not alleged a plausible claim for relief under the Privacy Act.

Therefore, Berry's claim under the Privacy Act in Count I must be dismissed.[2]

---

[2] Berry contends that he is at the very least entitled to the $1,000 minimum in damages provided by the Privacy Act

B. Count II

In Count II, Berry brings a Privacy Act claim under
§ 552a(i), the Privacy Act's criminal penalties provision.
Defendants contend that this claim must be dismissed because
§ 552a(i) contains no private right of action that would enable
Berry to bring a lawsuit to enforce its provisions.  Berry does
not respond to the FBI's argument that he is not authorized to
bring suit under § 552a(i).

Berry's claim under § 552a(i) fails for two reasons.
First, although Berry's claim is brought under § 552a(i), the
criminal penalties provision of the Privacy Act, it does not
request that the court impose any of the remedies provided in
that provision.  Rather, Count II seeks actual damages under §
552a(g)(4).  As discussed above, however, Berry has failed to
allege any pecuniary harm that could serve as a basis for actual
damages.

---

because there is no dispute that the FBI violated the Act.
Berry is mistaken.  In interpreting the civil remedies provision
of the Privacy Act, the Supreme Court has held that the
provision "authorizes plaintiffs to recover a guaranteed minimum
award of $1,000 for violations of the Act, but only if they
prove at least some 'actual damages.'"  Cooper, 566 U.S. at 295
(emphasis added) (citing Doe v. Chao, 540 U.S. 614, 620 (2004)).
Because Berry has failed to allege any actual damages, he is not
entitled to the statutory minimum damages of $1,000.

Second, to the extent Berry does seek the criminal penalties set forth in § 552a(i), his claim fails because the Privacy Act does not contain a private right of action allowing a private citizen to impose the criminal penalties set forth in that provision.  Generally, where a criminal prohibition contains no express private right of action, courts have been reluctant to infer one.  Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone . . . .").  Consistent with this principle, courts have concluded that the Privacy Act does not contain a private right of action that would allow litigants to pursue the criminal remedies in § 552a(i).  See Unt v. Aerospace Corp., 765 F.2d 1440, 1448 (9th Cir. 1985) ("Appellant's attempt to state a claim . . . under [§ 552a(i)(3)] . . . is futile.  This section provides for criminal penalties only, and generates no civil right of action.");  Ashbourne v. Hansberry, 302 F. Supp. 3d 338, 346 (D.D.C. 2018);  Hills v. Liberty Mut. Ins., No. 14-CV-0328S, 2015 WL 1243337, at *2 (W.D.N.Y. Mar. 18, 2015).  For this reason, Berry's claim under this provision fails as a matter of law.

Accordingly, the court dismisses Berry's claim under § 552a(i).

II.  Bivens 4th Amendment Claim (Count III)

     Berry alleges that Hastbacka is individually liable under
Bivens, 403 U.S. at 388, which recognizes "an implied private
right of action for damages against federal officers alleged to
have violated a citizen's constitutional rights."  Casey, 807
F.3d at 400.  Berry's Bivens claim is premised on the allegation
that Hastbacka's conduct violated his Fourth Amendment rights.
Specifically, Berry alleges that Hastbacka illegally searched
for and obtained information about him and his family.  Berry
also alleges that Hastbacka conducted an illegal search when he
called his parents and left them a voicemail inquiring about
him.

     Defendants move to dismiss Berry's Bivens claim, arguing
that Berry has failed to allege a constitutional violation that
could support such a claim.[3]  In addition, defendants assert that
Hastbacka is entitled to qualified immunity.

     A. Fourth Amendment Violation

     Defendants assert that Berry has failed to allege a
constitutional violation.  In support, they argue that Berry

_____

     [3] Defendants first raised the argument that Berry failed to
allege a constitutional violation in their reply.  Doc. no. 39
at 2-4.  As Berry did not object to defendants raising this
argument in their reply, and Berry addressed this issue in his
objection and his surreply, the court will consider whether his
complaint states a constitutional violation.

does not have standing to bring a claim on behalf of his parents, leaving a voicemail is not a violation of the Fourth Amendment, and the complaint's allegation that Hastbacka illegally obtained information about Berry and his family is speculative. In response, Berry argues that he had an expectation of privacy in the information that Hastbacka obtained.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." United States v. Rasberry, 882 F.3d 241, 246 (1st Cir. 2018) (quoting U.S. Const. amend. IV). "To prevail on a claim that a search or seizure violated the Fourth Amendment, a [party] must show as a threshold matter that he had a legitimate expectation of privacy in the place or item searched." United States v. Aiken, 877 F.3d 451, 453 (1st Cir. 2017) (quoting United States v. Battle, 637 F.3d 44, 48 (1st Cir. 2011)). To make such a demonstration, the party must show "both a subjective expectation of privacy and that society accepts that expectation as objectively reasonable." Id. (internal quotation marks omitted).

In addition, "Fourth Amendment rights are personal rights which may not be vicariously asserted." Plumhoff v. Rickard, 134 S. Ct. 2012, 2022 (2014) (internal quotation marks omitted). Although courts often refer to this issue as one of standing,

"the Supreme Court has made clear 'that [this] definition of Fourth Amendment rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing.'" United States v. Bain, 874 F.3d 1, 13 (1st Cir. 2017), cert. denied, 138 S. Ct. 1593 (2018) (quoting Rakas v. Illinois, 439 U.S. 128, 140 (1978)).  The Fourth Amendment's standing principle is embodied in the requirement that a party claiming a Fourth Amendment violation must demonstrate that he, and not someone else, had a legitimate expectation of privacy in the area or thing searched.  See Byrd v. United States, 138 S. Ct. 1518, 1526 (2018).

### 1.   Information about Berry and his parents

Berry alleges that Hastbacka violated his Fourth Amendment rights when he searched for and obtained Berry's parents' telephone number and Berry's unlisted telephone number. Defendants argue that the allegations concerning this search are too speculative to plead a Fourth Amendment violation.  In support, they observe that Berry's parents' number might have been published and that Berry does not allege that Hastbacka ever called him.  In response, Berry argues that he possesses a legitimate privacy interest in information about himself and his family.

Here, Berry's second amended complaint fails to allege any details concerning the purported search that Hastbacka undertook to obtain the relevant information. The most that Berry alleges is that Hastbacka "obtained the identity and contact information of [his] parents through some manner of search." Doc. no. 34 at ¶ 52. This allegation is simply too vague to plead that Hastbacka violated Berry's Fourth Amendment rights. Absent any allegations concerning how Hastbacka obtained the information at issue, there is no factual basis in the complaint to infer that Hastbacka searched an area or item in which Berry maintained an expectation of privacy.

Nevertheless, Berry appears to argue that he has an expectation of privacy in the information at issue, regardless of how it was obtained. In other words, Berry appears to argue that any means through which Hastbacka obtained the information at issue constitutes an illegal search under the Fourth Amendment. Berry is mistaken. Courts have consistently held that law enforcement may obtain basic information contained in a person's telephone records, such as his telephone number, from a third party. See Smith v. Maryland, 442 U.S. 735, 748 (1979) (defendant has no expectation of privacy in telephone company's records showing what phone numbers he dialed); United States v. Bynum, 604 F.3d 161, 164 (4th Cir. 2010) (defendant has no expectation of privacy in phone subscriber information including

his telephone number); United States v. Hudson, 15-CR-3078, 2016 WL 1317090, at *2 (D. Neb. Feb. 19, 2016) ("Under the third-party doctrine, courts have consistently held that individuals lack a reasonable expectation of privacy in basic telephone records."); United States v. Sanford, 12-CR-20372, 2013 WL 2300820, at *1 (E.D. Mich. May 24, 2013) ("[A] cell phone number fits into the category of information that is not considered private and does not implicate the Fourth Amendment.").

This principle applies even when law enforcement acquires information about a person's unlisted telephone number. United States v. Ahumada-Avalos, 875 F.2d 681, 683 (9th Cir. 1989) (concluding that government did not violate Fourth Amendment by obtaining defendant's unlisted telephone number from telephone company without warrant); In re Cell Tower Records Under 18 U.S.C. 2703(D), 90 F. Supp. 3d 673, 675 (S.D. Tex. 2015); United States v. Solomon, 02-CR-385, 2007 WL 927960, at *3 (W.D. Pa. Mar. 26, 2007). Therefore, Berry's allegation that Hastbacka acquired his or his parents' phone number is not enough, standing on its own, to plausibly plead a violation of his Fourth Amendment rights.

Nor does Riley v. California, 134 S. Ct. 2473 (2014), a case on which Berry relies, alter this conclusion. In Riley, the Supreme Court held that an officer could not search the contents of an arrestee's cell phone pursuant to the search

incident to arrest exception to the Fourth Amendment's warrant requirement.  Id. at 2485.  In doing so, the Supreme Court reasoned that there were elevated privacy interests implicated when police search the contents of a cell phone, which can contain vast amounts of personal data.  Id. at 2489-90.  Riley is inapplicable here because Berry does not allege that Hastbacka searched the contents of his cell phone—or any other item or area in which he had an expectation of privacy—to obtain the information at issue.[4]

Berry also cites Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 158 (2004) to support the proposition that he has a privacy interest in information about his family.  In Favish, the Supreme Court concluded that the Freedom of Information Act "recognizes surviving family members' right to personal privacy with respect to their close relative's death-scene images."  Favish, 541 U.S. at 170.  Favish is inapplicable here because it concerned the privacy interests recognized under the Freedom of Information Act.  As the Supreme Court noted, the "statutory privacy right [recognized in FOIA] . . . goes beyond the common

---

[4] Berry also cites United States v. Jones, 565 U.S. 400, 404 (2012).  In Jones, the Supreme Court held that the government violated the Fourth Amendment when agents, without a warrant, installed a GPS tracker on a defendant's automobile to monitor his movements.  Id.  Jones is not applicable here because Berry does not allege that Hastbacka used GPS technology or tracked his movements.

law and the Constitution." Id. at 170. For this reason, Favish does not support Berry's Fourth Amendment claim.

Finally, Berry cites several cases that discuss the sanctity of familial relationships in other legal contexts. Doc. no. 40 at 3. Those cases, however, do not hold that a person has a reasonable expectation of privacy under the Fourth Amendment in information about his family. Therefore, those cases are inapplicable here.

Accordingly, Berry has failed to plausibly allege that Hastbacka violated his Fourth Amendment rights by acquiring information about him or his parents.

### 2. Call to Berry's Parents

Berry also argues that Hastbacka conducted an illegal search under the Fourth Amendment when he called Berry's parents and inquired about him. Berry contends that Hastbacka's conduct constituted a search in violation of the Fourth Amendment because it "was an intrusion upon 'a constitutionally protected area in order to obtain information.'" Doc. no. 34 at ¶ 57.

Defendants argue that Berry has failed to allege a violation of the Fourth Amendment arising out of Hastbacka's voicemail for two reasons. First, the conduct alleged falls short of an encounter that would trigger the protections of the Fourth Amendment. Second, Hastbacka has failed to allege that

he has any expectation of privacy in his parents' telephone account and therefore does not have standing to raise a Fourth Amendment claim based on Hastbacka's call to that line.  In response, Berry contends that he has alleged a violation of the Fourth Amendment based on Hastbacka leaving the voicemail at issue.

Not all encounters between law enforcement officers and private citizens invoke the protections of the Fourth Amendment.  See United States v. Smith, 423 F.3d 25, 28 (1st Cir. 2005).  For example, "[p]olice may approach citizens in public spaces and ask them questions without triggering the protections of the Fourth Amendment."  United States v. Young, 105 F.3d 1, 6 (1st Cir. 1997).  Such conduct "falls short of triggering Fourth Amendment protections when, from the totality of the circumstances, [the court] determine[s] that the subject of any police interaction would have felt free to terminate the conversation and proceed along his way."  Id.  In other words, an "encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature."  Florida v. Bostick, 501 U.S. 429, 434 (1991).

Similarly, "[a] policeman may lawfully go to a person's home to interview him," United States v. Daoust, 916 F.2d 757, 758 (1st Cir. 1990), "because '[i]t is not improper for a police officer to call at a particular house and seek admission for the

purpose of investigating a complaint or conducting other official business,'" United States v. McKenzie, No. CR 08-1669 JB, (D.N.M. Apr. 13, 2010), aff'd, 532 F. App'x 793 (10th Cir. 2013), and aff'd, 532 F. App'x 793 (10th Cir. 2013) (quoting 1 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 2.3(b), at 475 (3d ed. 1996)). Such an encounter at a person's residence "is no longer consensual if the officer persists in the encounter after the homeowner directs him or her to leave, or otherwise indicates that the officer is not permitted on the homeowner's property." McKenzie, 2010 WL 1795173, at *12 (citing Rogers v. Pendleton, 249 F.3d 279, 288-90 (4th Cir. 2001)).

Here, the conduct Berry alleges does not rise to the level of a Fourth Amendment violation. Hastbacka's unsuccessful effort to contact Berry's parents is far less intrusive than the types of consensual encounters discussed above that do not trigger the protections of the Fourth Amendment. Hastbacka was not physically present at Berry's parents' home. Further, the complaint alleges no facts from which the court could infer that Berry's parents were not free to ignore Hastbacka's voicemail. Therefore, Berry has failed to allege that Hastbacka violated the Fourth Amendment by leaving the voicemail on his parents' telephone line.

In any case, even if Hastbacka's voicemail could be construed as a search that violates the Fourth Amendment, the second amended complaint does not allege facts demonstrating that such a "search" violated Berry's constitutional rights.  In other words, there are no allegations in the second amended complaint from which this court could infer that Berry had a legitimate expectation of privacy in his parents' telephone line or residence.  Indeed, Berry appears to allege facts contradicting the presence of any such interest.  In his second amended complaint, Berry alleges that he has not lived with his parents since 1998, that since then he has maintained a separate primary home address, and that he and his parents "live nowhere near" each other.  Doc. no. 34 at ¶ 20.  Accordingly, Hastbacka has not alleged that he has standing to challenge the purported violation of his parents' Fourth Amendment rights.

For these reasons, Berry's Fourth Amendment claims must be dismissed.

B. <u>Qualified Immunity</u>

Because the court has concluded that Berry failed to plead a constitutional violation, it need not consider whether qualified immunity applies here.

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss (doc. no. 35) is granted.  The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

July 17, 2018

cc:  Counsel and Pro Se Party of Record